UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: _____

BERKLEY INSURANCE COMPANY,
a Foreign corporation,

    Plaintiff,

v.

TITUS CONSTRUCTION GROUP, INC.,
a Florida corporation, and TITUS GROUP
HOLDINGS, LLC, a Florida limited liability
company,

    Defendants.
_____/

## **COMPLAINT FOR DAMAGES**

Plaintiff, BERKLEY INSURANCE COMPANY ("BERKLEY"), by and through its undersigned counsel, hereby sues Defendants, TITUS CONSTRUCTION GROUP, INC. ("TITUS") and TITUS GROUP HOLDINGS, LLC ("HOLDINGS"), and states as follows:

### **I. INTRODUCTION**

1. This is an action for damages for breach of an indemnity agreement. BERKLEY, as surety, issued payment and performance bonds on behalf of TITUS and in favor of several obligees, guaranteeing TITUS' work on various construction projects. As a condition to the issuance of the bonds, TITUS (and others) executed an indemnity agreement in favor of BERKLEY. Under the indemnity agreement, TITUS agreed, among other things, to indemnify BERKLEY from any loss or expense on the bonds.

2. TITUS defaulted on the bonded construction contracts and BERKLEY received numerous claims under the payment and performance bonds. BERKLEY has been required to satisfy claims under the bonds and has incurred and continues to incur substantial loss adjustment expenses.

CASE NO.: _____

3. Despite demand, TITUS has not complied with the obligations of the indemnity agreement. As such, TITUS is in material breach of its obligations under the indemnity agreement. Accordingly, BERKLEY brings this action to enforce the indemnity agreement there against.

## II. **PARTIES, JURISDICTION AND VENUE**

4. Subject matter jurisdiction is based upon 28 U.S.C. §1332(a)(1), diversity of citizenship. The parties are citizens of different states and the amount in controversy exceeds the sum of Seventy-Five Thousand and 00/100 Dollars ($75,000.00), exclusive of costs, interest, and attorney's fees.

5. Plaintiff, BERKLEY, is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Greenwich, Connecticut, who is otherwise authorized to do business within the State of Florida. BERKLEY is a citizen of the States of Delaware and Connecticut.

6. Defendant, TITUS, is a corporation organized and existing under the laws of the State of Florida, whose principal place of business is located in Fort Lauderdale, Broward County, Florida. TITUS is a citizen of the State of Florida.

7. Defendant, HOLDINGS, is a limited liability company organized and existing under the laws of the State of Florida, whose principal place of business is located in Fort Lauderdale, Broward County, Florida. The only members of HOLDINGS are NATHAN G. PARDUE, with a residential address in Fort Lauderdale, Florida, and WILLIAM J. HASSEL, with a residential address in Deerfield Beach, Florida. Both NATHAN G. PARDUE and WILLIAM J. HASSEL are citizens of the State of Florida. HOLDINGS is a citizen of the State of Florida.

8. Venue is proper in this Court because it is the situs where the legal obligation arose and where the corporate Defendant conducted business which gives rise to the instant claims.

CASE NO.: _____

9. All conditions precedent to the filing of the instant action have occurred or have otherwise been waived.

### III.  GENERAL ALLEGATIONS

A.  **The Bonded *Contracts*, Projects, and *Bonds***

10. BERKLEY is engaged in the business of providing surety bonds.

11. TITUS is a Florida-based construction company.

12. TITUS entered into various construction contracts with several entities requiring TITUS to obtain payment and performance bonds (the "Bonded Contracts").  In connection with the Bonded Contracts, BERKLEY issued the following *Performance Bonds* and *Payment Bonds* (collectively, the "*Bonds*"):

| Obligee | Project | Penal Sum | Bond No. |
|---|---|---|---|
| Suffolk Construction Company | Met Square Retail Shell Podium | $306,009 | 0198250 |
| Suffolk Construction Company | Met Square ZF Floors | $171,540 | 0198249 |
| Suffolk Construction Company | Met Square Residential Tower | $4,977,151 | 0205956 |
| KAST Construction III, LLC | One St. Petersburg Project - Framing and Drywall | $5,950,000 | 0203247 |
| Tutor-Perini Building Corp. | Element - Tribute | $2,800,000 | 0207212 |

The *Bonds* are attached hereto and made a part hereof as **Composite Exhibits "A.1 through A.5"**

B.  **Claims Against the Bonded Projects**

13. In furtherance of Suffolk Construction Company's claims against Bond Nos. 0198250, 0198249 and 0205956 (the "*Met Square Bonds*"), Suffolk Construction Company has asserted claims against both TITUS and BERKLEY in the total approximate amount of Four Million Seven Hundred Thousand and 00/100 Dollars ($4,700,00.00) in the action styled *Berkley*

- 3 -

CASE NO.: _____

*Insurance Co. v. Suffolk Construction Co, Inc.*, United States District Court for the Southern District of Florida, Case No. 19-23059-CIV-WILLIAMS.

14. BERKLEY has incurred and/or anticipates incurring significant financial losses and expenses as a result of having issued the *Met Square Bonds*, including but not limited to its continued investigation, defense and/or resolution of Suffolk Construction Company's claims under the *Met Square Bonds*.

15. In furtherance of KAST Construction III, LLC's claims against Bond No. 0203247 (the "*One St. Pete Bonds*"), KAST Construction III, LLC has asserted various claims against both TITUS and BERKLEY in the approximate amount of One Million Six Hundred Thousand ($1,600,000.00) in the action styled *Kast Construction III, LLC v. Titus Construction Group et al,* Pinellas County Circuit Court Case No. 18-003560-CI.

16. BERKLEY has incurred and/or anticipates incurring significant financial losses and expenses as a result of having issued the *One St. Pete Bonds*, including but not limited to its continued investigation, defense and/or resolution of KAST Construction III, LLC's claims under the *One St. Pete Bonds*.

17. In furtherance of Tutor Perini Building Corp.'s claims against Bond No. 0207212 (the "*Element–Tribute Bonds*"), Tutor Perini Building Corp. has asserted various claims against both TITUS and BERKLEY in an undefined amount in the action styled *Tutor Perini Building Corp. v. 299 N. Federal Master LLC et al.,* Broward County Circuit Court Case No. 19-012995 (07)/19-024223 (07) (consolidated).

18. BERKLEY has incurred and/or anticipates incurring significant financial losses and expenses as a result of having issued the *Element–Tribute Bonds*, including but not limited to its continued investigation, defense and/or resolution of Tutor Perini Building Corp.'s claims under the *Element–Tribute Bonds*.

CASE NO.: _____

### C.   The Non-Bonded Contracts and Projects

19.   In addition to the foregoing, BERKLEY has and continues to expend significant additional funds in assisting TITUS in the prosecution and defense of the following various other non-bonded contract claims, with the intention of securing and marshalling any and all available assets of TITUS for purposes of satisfying the Indemnitors' outstanding obligations to BERKLEY under the indemnity agreement.

20.   TITUS has agreed that all costs incurred by BERKLEY in the representation of TITUS shall constitute loss adjustment expenses under the indemnity agreement.

### D.   The *Indemnity Agreement*

21.   As an inducement to, and in consideration for, issuing the Bonds, BERKLEY required TITUS, and its various corporate and individual indemnitors – HOLDINGS, William J. Hassel, Nathan G. Pardue and Molly C. Bettes (collectively with TITUS, the "INDEMNITORS") – to execute the *General Agreement of Indemnity* dated March 11, 2016 (the "*Indemnity Agreement*"), a true copy of which is attached hereto and made a part hereof as **Exhibit "B"**.

22.   Pursuant to Article 1, Section 1.01 of the *Indemnity Agreement*, the INDEMNITORS, jointly and severally, agreed to exonerate, indemnify, and hold harmless BERKLEY from any potential loss or expense associated with BERKLEY's issuance of the *Bonds*:

> ***The Undersigned, jointly and severally, shall exonerate, hold harmless, indemnify, and keep indemnified the Surety from and against any and all liability*** *arising from any cause of action, claim, cost, damage, debt, demand, expenditure, liability, loss, payment, obligation, or penalty of any kind whatsoever*, including without limitation, interest costs, court costs, costs to compromise or settle any claim, expert fees, investigative costs and the fees and expenses of attorneys, accountants and other professional or service providers of any nature whatsoever, whether or not alleged, asserted, awarded, contingent, incurred, potential, threatened, matured or unmatured, and shall reimburse Surety for any payment by it, related to or by reason of: (i) ***this Agreement, a Contract or Bonds and/or Surety's***

> *procuring or enforcement of the same or the prosecution, investigation or defense of any Claim against or by Surety*; (ii) any *loans, credits, advances or monies guaranteed, lent, advanced or extended by Surety from time to time to or for the account of any Undersigned*; (iii) Surety having accepted Collateral as security for the obligations of the Undersigned to Surety or the enforcement of Surety's interest therein; or (iv) the occurrence of any Event of Default and *any prosecution, investigation, defense or settlement of same by Surety*; or (v) *any action or inaction by Surety or liability incurred or sustained by Surety in reliance upon representations or statements made by indemnitors or their attorneys and representatives regarding defenses available to an Indemnitor and/or Surety to claims made against such Bonds* (all of the foregoing referred to singly as an "Indemnified Claim" or an "Indemnified Expense" and collectively as an "Indemnified Claim or Expense"). (Emphasis added)

23. Pursuant to Article I, Section 1.02 of the *Indemnity Agreement*, the INDEMNITORS further, jointly, and severally, agreed to deposit with BERKLEY such collateral security as may be necessary to protect, exonerate and hold harmless BERKLEY from any potential loss or expense associated with BERKLEY's issuance of the *Bonds*:

> To *further protect, exonerate and save harmless the Surety, Indemnitors shall pay over to the Surety*, its successors and assigns, *all sums of money which the Surety* shall pay or cause to be paid or *may be potentially liable to pay related to or by reason of an Indemnified Claim*; such payment to be made to the Surety as soon as Surety notifies Indemnitor to deposit such funds with Surety, whether or not the Surety established or increased any reserve or shall have paid out such sum or any part thereof or not; and Surety is hereby authorized to use such funds, or any part thereof, in payment or settlement of any such demand, claim, liability, loss, charges, costs and expenses or other obligations Indemnitors may be liable to Surety under the terms of this Agreement Surety shall have no obligation to invest or otherwise provide interest on such funds paid to Surety by Indemnitor and Surety may commingle the funds with other funds of the Surety. Surety may apply any unused funds as collateral security to any other Bond or obligation of the Indemnitor under this Agreement. (Emphasis added)

24. Pursuant to Article II, Section 2.01 of the *Indemnity Agreement*, the INDEMNITORS, jointly and severally, agreed that BERKLEY may negotiate, settle, or otherwise resolve any claims against the *Bonds*, including but not limited to the underlying claims by or against TITUS under the Bonded Contracts:

CASE NO.: _____

> ***The Surety shall have the exclusive right*** *in its name and/or the name of any Indemnitor to decide and determine whether any Indemnified Claim, or any claim, off-set or other right of an Indemnitor on a bonded Contract or Contract in which the Surety has an interest, shall or shall not be paid, compromised, settled, resisted, defended, prosecuted, tried or appealed*, and the Surety's decision thereon, absent fraud, shall be final, conclusive and binding upon the Indemnitors. An *itemized statement of payments made by the Surety for any of the purposes specified herein, sworn to by an officer of the Surety or the copies of the checks or drafts for such payments,* ***shall be prima facie evidence*** *of the liability of the Indemnitors to reimburse the Surety such amounts with interest from the date of payment*. (Emphasis added)

25. Pursuant to Article III, Section 3.01 of the *Indemnity Agreement*, the INDEMNITORS, jointly and severally, assigned to BERKLEY as "Collateral" their various rights in and to certain enunciated assets of the INDEMNITORS:

> *As collateral security for the prompt and timely performance of all liabilities, obligations, and duties of the Undersigned to Surety under this Agreement, any Bonds or any Contract, whether now existing or hereafter arising, the* ***Undersigned hereby assign, convey, transfer and set over to Surety*** (the "Assignment"), and grant to Surety a general lien and continuing security interest in and to, all of their respective right, title and interest in and to the following described property (the "Collateral"): (i) ***all Contracts, and any extensions or modifications thereto***; (ii) all subcontracts and purchase orders let or to be let in connection with all Contracts and all proceeds of any surety Bonds supporting the same; (iii) *all property constituting "accounts"* as such term is defined in the Uniform Commercial Code (the "UCC") relating to Contracts; … (viii) ***all Claims against any subcontractor, laborer or materialmen***, or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools or other equipment in connection with or on account of any Contract; (ix) ***any and all percentages retained on account of any Contract, and any and all sums that may be due under any Contract or thereafter may become due*** *including the right to prosecute, settle, and receive the proceeds of any demands, causes of action, Change Orders, damages or Claims relating to or arising out of any Contract* …. (Emphasis added)

26. Pursuant to Article VII of the *Indemnity Agreement*, and in addition to those rights afforded BERKLEY in Article II, Section 3.01, the INDEMNITORS, jointly and

CASE NO.: _____

severally, assigned to BERKLEY any and all interests that the INDEMNITORS may possess to any funds due and owing under any of the Bonded Contracts:

> The Indemnitors agree and hereby expressly declare that ***all funds due or to become due under any Contract covered by a Bond <u>are Trust Funds</u>, whether in the possession of an Indemnitor or another, for the benefit and payment of all persons to whom the Indemnitor incurs obligations in the performance of a Contract for which the Surety would be liable under the Bond and for the benefit of Surety for any liability or loss it may sustain or incur by reason of or in consequence of the execution of such Bonds***. Upon notice from the Surety to an Obligee, Indemnitors hereby authorize and direct the Obligee of any such Bond to pay to the Surety any and all Funds due or to become due on any Contract bonded by Surety, and upon payment of such funds the Obligee is released and discharged from any and all liability to Indemnitors in connection with the payment. (Emphasis added)

27. Pursuant to Article XV of the *Indemnity Agreement*, the INDEMNITORS, jointly and severally, appointed, and designated BERKLEY as their "Attorney in Fact" to execute any and all documentation necessary to effectuate the terms and purposes of the *Indemnity Agreement*:

> The Undersigned hereby jointly and severally ***<u>irrevocably nominate, constitute, appoint and designate Surety as their Attorney-in-Fact</u>*** with the right and authority, but not the obligation, ***to exercise all of the rights of the Undersigned or any one of them assigned, transferred and set over to Surety in this Agreement, and in the name of the Undersigned to make, execute, and deliver all instruments necessary to perfect, preserve and protect the security interest or to vest in Surety absolute title, and any rights, to the Collateral***, and to secure to the Surety any other rights, benefits and privileges granted to Surety hereby and all assignments, documents, checks, drafts, or other instruments made or issued in payment of any obligations to which Surety has the right to receipt of payment pursuant to this Agreement, as deemed necessary and proper by Surety. The Undersigned hereby ratify and confirm all acts and actions taken and done by Surety as such Attorney-in-Fact and agree to protect and hold harmless the Surety for acts herein granted as Attorney-in-Fact. (Emphasis added)

**E.   BERKLEY's Demands, Loss and Expenses**

28. As a result of the various claims against the *Bonds*, BERKLEY engaged in numerous written and oral communications with the INDEMNITORS, seeking indemnity, exoneration, and collateralization under the *Indemnity Agreement*.

29. On August 27, 2019, BERKLEY made specific written indemnity demand upon the INDEMNITORS to, among other issues, indemnify and exonerate BERKLEY against the various pending claims. A true and correct copy of BERKLEY's correspondence dated August 27, 2019 is attached hereto and made a part hereof as **Exhibit "C"**.

30. Despite such demands, the INDEMNITORS have and continue to fail and/or refuse to indemnify and exonerate BERKLEY under the *Indemnity Agreement*.

31. Despite the numerous demands, the INDEMNITORS have failed to indemnify BERKLEY or post collateral as required under the *Indemnity Agreement*.

32. BERKLEY has incurred significant financial losses and expenses as a result of having issued the *Bonds* under the Bonded Contracts to TITUS.

33. BERKLEY remains exposed to potential additional liability under the *Bonds* in the approximate amount of Six Million Three Hundred Thousand and 00/100 Dollars ($6,300,000.00), based upon the pending claims of Suffolk Construction Company in the approximate amount of $4,700,000, and the pending claims of KAST Construction III, LLC in the approximate amount of $1,600,000 – for all which amounts BERKLEY is entitled to be collateralized by the INDEMNITORS.

34. As of February 24, 2021, BERKLEY has incurred and paid total losses and loss adjustment expenses in favor of TITUS under the *Indemnity Agreement* in the amount of Ten Million Six Hundred Thirty-Two Thousand Seven Hundred Thirty-One and 48/100 Dollars ($10,632,731.48).

35. BERKLEY anticipates incurring additional losses and expenses in investigating, defending against and/or satisfying any liability which may ultimately be determined in connection with any existing/future claims against the *Bonds*.

36. BERKLEY has retained the services of the undersigned counsel to represent its interests in this matter and is required to pay a reasonable fee for such services.

## COUNT I – BREACH OF CONTRACT: FAILURE TO POST COLLATERAL
### (AS TO TITUS AND HOLDINGS)

37. BERKLEY re-alleges and re-avers the allegations of paragraphs 1 through 36 hereof, as if fully set forth herein.

38. This is an action for damages seeking relief at law under the *Indemnity Agreement*.

39. There exists a valid and fully enforceable contract between BERKLEY and TITUS / HOLDINGS, the terms of which are memorialized in the *Indemnity Agreement*.

40. BERKLEY has fully performed all of its obligations under the *Indemnity Agreement*.

41. Pursuant to the terms of the *Indemnity Agreement*, TITUS and HOLDINGS agreed to immediately provide BERKLEY with sufficient funds to cover any losses under the *Bonds*.

42. By virtue of the rights of collateralization set forth in the *Indemnity Agreement*, BERKLEY is entitled to the assets of TITUS and HOLDINGS to protect and/or secure BERKLEY from any and all losses and/or expenses which may be incurred in connection with BERKLEY's issuance of the *Bonds*.

43. TITUS and HOLDINGS are obligated to BERKLEY under the *Indemnity Agreement* for any and all additional indebtedness under the *Indemnity Agreement* which may continue to accrue, including but not limited to the expenditure of funds paid in investigation, resolution, and/or satisfaction of any liability which may ultimately be determined in favor of any claimants.

44. As a result of BERKLEY's potential liability arising from the pending claims, BERKLEY has made demand upon TITUS and HOLDINGS under the *Indemnity Agreement* to

CASE NO.: _____

post satisfactory collateral with BERKLEY to cover BERKLEY's potential losses.

45. Despite such demands, TITUS and HOLDINGS have failed and/or refused to fully perform their obligations under the *Indemnity Agreement*, including but not limited to their obligation to post satisfactory collateral in the amount of Six Million Three Hundred Thousand and 00/100 Dollars ($6,300,000.00). Unless the personal assets of TITUS and HOLDINGS are collateralized, BERKLEY will not be adequately secured for its obligation on the *Bonds*.

WHEREFORE, BERKLEY respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against TITUS and HOLDINGS, requiring TITUS and HOLDINGS to perform under the *Indemnity Agreement* by posting sufficient collateral to exonerate BERKLEY for any sums that BERKLEY may incur and/or be required to pay for losses and/or expenses incurred as a result of having issued the *Bonds*, paying and reimbursing BERKLEY for its attorneys' fees and costs incurred in prosecution of the instant action, and awarding BERKLEY such other and further relief as this Court deems necessary, just and proper.

**COUNT II - BREACH OF CONTRACT: DAMAGES /
DEMAND FOR INDEMNIFICATION
(AS TO TITUS AND HOLDINGS)**

46. BERKLEY re-alleges and re-avers the allegations of paragraphs 1 through 36 hereof, as if fully set forth herein.

47. This is an action for damages seeking relief at law under the *Indemnity Agreement*.

48. There exists a valid and fully enforceable contract between BERKLEY and the INDEMNITORS, the terms of which are memorialized in the *Indemnity Agreement*.

49. BERKLEY has fully performed all of its obligations under the *Indemnity Agreement*.

50. As a result of the claim against the *Bonds*, BERKLEY has made demand upon the INDEMNITORS under the *Indemnity Agreement* for payment in satisfaction of the losses and

expenses incurred by BERKLEY.

51.     The INDEMNITORS have failed and/or refused to fully perform their obligations under the *Indemnity Agreement*, including but not limited to their obligation to indemnify BERKLEY.

52.     As a proximate result of the INDEMNITORS' breach of their obligations under the *Indemnity Agreement*, BERKLEY has sustained damages in excess of Ten Million Six Hundred Thirty-Two Thousand Seven Hundred Thirty-One and 48/100 Dollars ($10,632,731.48) and will continue to incur substantial financial damages.

WHEREFORE, Plaintiff, BERKLEY respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against the Defendants, TITUS and HOLDINGS, awarding BERKLEY: (a) its general, special and consequential damages which have been and/or will be incurred as a result of the breach of the *Indemnity Agreement;* (b)  its attorneys' fees and costs incurred in prosecution of the instant action pursuant to the terms of the *Indemnity Agreement*, and (c) such other and further relief as this Court deems necessary, just and proper.

### COUNT III - COMMON LAW INDEMNIFICATION
### (AGAINST TITUS)

53.     BERKLEY re-alleges and re-avers the allegations of paragraphs 1 through 36 hereof, as if fully set forth herein.

54.     This is an action for damages seeking relief at common law and in equity.

55.     There exists a special relationship between BERKLEY, as surety, and TITUS, as principal, arising out of the parties' business dealings related to the Bonded Contracts, Projects, and *Bonds*, such that it is appropriate for common law indemnification to exist.

56.     BERKLEY has fully and completely performed any and all obligations arising out of the parties' business dealings related to the Bonded Contracts, Projects and *Bonds*, and is wholly

CASE NO.: _____

without fault for any losses, expenses and/or liabilities which have and/or may ultimately arise.

57. BERKLEY has incurred losses, loss adjustment expenses and other damages as a result of the special relationship between BERKLEY and TITUS in excess of Ten Million Six Hundred Thirty-Two Thousand Seven Hundred Thirty-One and 48/100 Dollars ($10,632,731.48). Additional indebtedness arising out of the special relationship has and will continue to accrue.

58. Any and all losses and expenses incurred to date as a result of the special relationship between BERKLEY and TITUS, as well as any liability which may be imposed upon BERKLEY as a result of the pending claims against the *Bonds*, arise only out of the vicarious, constructive, derivative or technical liability imposed upon BERKLEY as a result of the fault and/or wrongdoing of TITUS.

59. At common law, TITUS is responsible to BERKLEY for any and all losses and expenses incurred or to be incurred.

WHEREFORE, Plaintiff, BERKLEY respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against the Defendant, TITUS, awarding BERKLEY: (a) its general, special and consequential damages which have been and/or will be incurred as a result of BERKLEY's payment of losses and expenses for which TITUS should be liable under the legal theory of common law indemnity; (b) its reasonable attorneys' fees and costs incurred in prosecution of the instant action; and (c) such other and further relief as this Court deems necessary, just and proper.

### COUNT IV - CONTRACTUAL EXONERATION
### (AS TO TITUS AND HOLDINGS)

60. BERKLEY re-alleges and re-avers the allegations of paragraphs 1 through 36 hereof, as if fully set forth herein.

61. This is an action for contractual exoneration.

CASE NO.: _____

62. BERKLEY remains exposed to claims on the various Bonded Contracts, Projects, and *Bonds*.

63. Pursuant to the *Indemnity Agreement*, each of the INDEMNITORS, jointly and severally, agreed to exonerate BERKLEY from and against any losses and or expenses incurred in connection with BERKLEY's issuance of the *Bonds.*

64. By virtue of the right of exoneration set forth in the *Indemnity Agreement*, BERKLEY is entitled to the INDEMNITORS' assets to protect BERKLEY from any and all additional losses and/or expenses which may be incurred in connection with BERKLEY's issuance of the *Bonds*.

65. The INDEMNITORS have failed to satisfy their obligations under the *Indemnity Agreement* by refusing to exonerate or otherwise place funds with BERKLEY sufficient to cover the actual losses and claim against the *Bonds*.

66. Unless the personal assets of the INDEMNITORS are collateralized, BERKLEY will not be adequately secured for its obligation on the *Bonds*.

WHEREFORE, Plaintiff, BERKLEY respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against the Defendants, TITUS and HOLDINGS: (a) requiring TITUS and HOLDINGS to perform under the *Indemnity Agreement* and satisfy any and all pending claims under the *Bonds* which have not yet been paid by BERKLEY or, in the alternative, to post with BERKLEY satisfactory monies so as to protect BERKLEY from such claims and/or liabilities; (b) reimbursing BERKLEY for its attorneys' fees and costs incurred in prosecution of the instant action; and (c) awarding BERKLEY such other and further relief as this Court deems necessary, just and proper.

CASE NO.: _____

## COUNT V - COMMON LAW EXONERATION
## (<u>AGAINST TITUS</u>)

67. BERKLEY re-alleges and re-avers the allegations of paragraphs 1 through 36 hereof, as if fully set forth herein.

68. This is an action for exoneration at common law and in equity.

69. There exists a special relationship between BERKLEY, as surety, and TITUS, as principal, arising out of the parties' business dealings related to the Bonded Contracts, Projects, and *Bonds*, such that it is appropriate for common law exoneration to exist.

70. BERKLEY has fully and completely performed any and all obligations arising out of the parties' business dealings related to the Bonded Contracts, Projects and *Bonds*, and is wholly without fault for any losses, expenses and/or liabilities which have and/or may ultimately arise therefrom.

71. BERKLEY has sustained damages in excess of Ten Million Six Hundred Thirty-Two Thousand Seven Hundred Thirty-One and 48/100 Dollars ($10,632,731.48) and will continue to incur substantial financial damages.

72. Any and all losses and expenses incurred to date as a result of the special relationship between BERKLEY and TITUS, as well as any liability which may be imposed upon BERKLEY as a result of the pending claim against the *Bonds*, arise only out of the vicarious, constructive, derivative or technical liability imposed upon BERKLEY as a result of the fault and/or wrongdoing of TITUS.

73. At common law, TITUS is responsible to BERKLEY for any and all losses and expenses incurred or to be incurred, and TITUS is further obligated to immediately provide BERKLEY with sufficient funds as needed to satisfy BERKLEY's existing and potential obligations under the *Bonds*.

74. By virtue of the right of exoneration set forth at common law and in equity, BERKLEY is entitled to TITUS' assets to protect BERKLEY from any and all losses and/or expenses which may be incurred in connection with BERKLEY's issuance of the *Bonds*.

75. TITUS has failed to satisfy its obligations at common law and in equity by refusing to exonerate or otherwise place funds with BERKLEY sufficient to cover the actual losses and claim against the *Bonds*.

76. Unless the personal assets of TITUS are collateralized, BERKLEY will not be adequately secured for its obligation on the *Bonds*.

WHEREFORE, Plaintiff, BERKLEY respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against the Defendant, TITUS: (a) requiring TITUS to exonerate BERKLEY at common law and in equity by satisfying any and all pending claims under the *Bonds* which have not yet been paid by BERKLEY or, in the alternative, to post with BERKLEY satisfactory monies so as to protect BERKLEY from such future claims and/or liabilities; (b) reimbursing BERKLEY for its attorneys' fees and costs incurred in prosecution of the instant action; and (c) awarding BERKLEY such other and further relief as this Court deems necessary, just and proper.

DATED this 30th day of April 2021.

**ETCHEVERRY HARRISON, LLP**
Attorneys for BERKLEY
150 South Pine Island Road, Suite 105
Ft. Lauderdale, FL 33324
Phone: (954) 370-1681
Fax: (954) 370-1682
Etcheverry@etchlaw.com
Geller@etchlaw.com
Service@etchlaw.com

By: /s/ *Edward Etcheverry*
Edward Etcheverry, Fla. Bar No.: 856517
Jeffrey S. Geller, Fla. Bar No.: 63721